UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JULIE P.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-2642-MG-JRS |
| | ) | |
| KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

In September 2019, Plaintiff Julie P. applied for Title VII Supplemental Security Income Benefits ("SSI") from the Social Security Administration ("SSA"), alleging a disability onset date of August 21, 2019. [Filing No. 7-6 at 2-7.] Her application was initially denied on January 30, 2020, [Filing No. 7-4 at 8-11], and upon reconsideration on August 3, 2020, [Filing No. 7-4 at 21-23]. Administrative Law Judge Frederic Roberson (the "ALJ") conducted a telephonic hearing on May 12, 2021. [Filing No. 7-2 at 34-61.] The ALJ issued a decision on June 10, 2021, concluding that Julie P. was not entitled to receive benefits. [Filing No. 7-2 at 26.] The Appeals Council denied review on August 19, 2021. [Filing No. 7-2 at 2-4.] On October 14, 2021, Julie P. filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [Filing No. 10.] For the following reasons, the Court **REVERSES** the decision of the ALJ denying Julie P. benefits.

# I.
## STANDARD OF REVIEW[2]

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." Biestek v. Berryhill, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." Stephens v. Berryhill, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. Id. For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" Zoch v. Saul, 981 F.3d 597, 601 (7th Cir. 2020) (quoting Biestek, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." Stephens, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" Zoch, 981 F.3d at 601 (quoting Summers v. Berryhill, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built

---

[2] The regulations governing disability determinations for benefits under Title II and Title XVI are identical in virtually all relevant respects unless otherwise noted.

an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform His past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at step four to determine whether the claimant can perform His own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for steps one through four; only at step five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's

decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Julie P. was 47 years old on August 21, 2019—the date of her alleged onset of disability. [Filing No. 7-4 at 26.] Julie P. had completed through 12th grade and had past work experience as floor worker. [Filing No. 7-7 at 14.] Julie P.'s application alleges that she could no longer work because of depression, anxiety, lower back pain, knee pain and weakness and migraines. [Filing No. 7-7 at 13.] Following the May 2021 hearing, the ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 416.920(a)(4) and concluded that Julie P. was not disabled. [Filing No. 7-2 at 13-26.] Specifically, the ALJ found as follows:

- At Step One, Julie P. has not engaged in substantial gainful activity[3] since September 11, 2019 (the application date). [Filing No. 7-2 at 18.]

- At Step Two, Julie P. "has the following severe impairments: spine disorders, migraine, obesity, and anxiety." [Filing No. 7-2 at 18.]

- At Step Three, Julie P. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 7-2 at 18.] The ALJ specifically considered Listings 1.15, 1.16, 11.00, 11.02, 11.04-11.14, 11.17-11.18, 11.20, and 11.22. [Filing No. 7-2 at 18-19.] As to the "paragraph B" criteria for Listings 12.04, 12.06 and 12.10, the ALJ found that Julie P. had "moderate" limitations in three areas: (1) interacting with others, (2)

---

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

4

- concentrating, persisting, or maintaining pace ("CPP"), and (3) understanding, remembering, or applying information; and had one "mild" limitation in the area of adapting or managing oneself. [Filing No. 7-2 at 19-20.]

- After Step Three but before Step Four, Julie P. had the RFC "to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant needs the option to alternate positions every 10 minutes and requires a cane to ambulate. She is limited to never climbing ladders, ropes, or scaffolds, kneeling, crouching, or crawling, and occasionally climbing ramps and stairs, balancing, and stooping. The claimant must avoid frequent, concentrated atmospheric conditions as defined in the Selected Characteristics of Occupations of the DOT and must avoid concentrated exposure to flashing or strobe lighting, dangerous machinery, and unprotected heights. She has the mental residual capacity to understand, remember, and carry out simple instructions, perform work allowing for a flexible pace free of production paces or quotas, and have occasional interaction with supervisors other than what is necessary for task instruction and task completion." [Filing No. 7-2 at 20-21.]

- At Step Four, the ALJ found Julie P. had no past relevant work. [Filing No. 7-2 at 24.]

- At Step Five, considering the Julie P.'s age, education, work experience, the RFC, and the Vocational Expert's ("VE") testimony, the ALJ found there are jobs that exist in significant numbers in the national economy Julie P. can perform. [Filing No. 2 4.] The ALJ found Julie P. was not under a disability from January 24, 2018, the alleged onset date, through September 30, 2020, the date last insured. [Filing No. 7-2 at 25.]

### III.
### DISCUSSION

Julie P. argues that: (1) the ALJ erred by failing to properly address her moderate limitations in CPP and interacting with others in the hypotheticals to the VE or the adopted RFC; (2) the ALJ failed to properly analyze record evidence in finding that migraines did not medically equal a listing; (3) the ALJ failed to engage a medical expert to interpret and provide guidance on severe migraines; and (4) the ALJ erred in her SSR 16-3p subjective symptom analysis. [Filing No. 9 at 3-4.]

A.  **Mental RFC**

Julie P. contends that although the ALJ found the mental RFC opinion of psychological consultative examiner Dr. Kenneth McCoy, Ph.D. "generally persuasive", the ALJ's consideration of the opinion is inconsistent with the record and failed to incorporate all aspects of Dr. McCoy's opinions in the RFC and hypothetical. [*See* Filing No. 9 at 23.] Specifically, Julie P. argues that the RFC does not adequately reflect the limitations the consultative examiner found.

In her brief, Julie P. argues that when a claimant is moderately limited in the area of CPP, like she is, an RFC limitation of "simple, routine tasks" is insufficient as a matter of law and cites Seventh Circuit cases in support of that proposition. [Filing No. 9 at 20-22.] She further argues that a hypothetical to the VE using such an RFC is in error because they do not properly account for her moderate CPP limitations. [Filing No.9 at 21.] She contends that the ALJ's addition of no production pace rate does not accommodate these difficulties, citing to further Seventh Circuit cases in support. [Filing No. 9 at 21-22.] She summarizes this caselaw by stating that "[n]one of these terms addressed the impact of the mental limitations such as [Julie P.'s] ability to perform activities within a schedule, maintain regular attendance, or be punctual within customary tolerances. Nor do they address the finding that [Julie P.] has moderate limitations in maintaining concentration, persistence or pace." [Filing No. 9 at 22.] She faults the ALJ for not discussing her ability to complete simple tasks for a sustained period. [Filing No. 9 at 24.]

In response, the Commissioner contends the ALJ's RFC assessment was supported by objective evidence. [Filing No. 13 at 11.] The Commissioner says that, here, the RFC adopted by the ALJ tracks the opinions of the state consultants as well as the consultative examiner, and therefore the RFC was supported by the evidence. [Filing No. 13 at 11-12.] The Commissioner argues that the ALJ more than minimally articulated his consideration of the reviewing psychologists' findings as well as reasonably evaluated the opinion of the consultative

psychological examiner. [Filing No. 13 at 11-12.] The Commissioner contends that the ALJ provided a limitation to not just simple work, but flexible simple work, free from any production pace or quotas, and only occasional interaction with supervisors other than what is necessary for task instruction and completion, appropriately limiting Julie P. and accounting for her social limitations and in CPP. [Filing No. 13 at 11-12.]

In reply, Julie P. discounts the Commissioner's contention that if the Court finds the ALJ's assessment was inconsistent with Dr. McCoy's findings, such a decision was merely harmless error. [Fling No. 14 at 3.]

The ALJ must always take care to ensure that the RFC "include[s] all of a claimant's limitations supported by the medical record." *Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021). "Crucially, however, an ALJ need only include limitations that are supported by the medical record." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022).

CPP "refers to the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00E(3). A "moderate limitation" means that a claimant's functioning in a particular area is "fair." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00F(2). "'Fair' in ordinary usage does not mean 'bad' or 'inadequate.' So a 'moderate' limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace." *Pavlicek*, 994 F.3d at 783.

"[W]hen an ALJ finds there are documented limitations of [CPP], the hypothetical question presented to the VE must account for these limitations." *Winsted v. Berryhill*, 923 F.3d 472, 476 (7th Cir. 2019). Employing terms like "simple, repetitive tasks" on their own will not necessarily account for problems captured by CPP. *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). This is

7

so because "observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift." *Id.* However, in certain cases, "[e]ven generic limitations, such as limiting a claimant to simple, repetitive tasks, **may** properly account for moderate limitations in [CPP], so long as they adequately account for the claimant's demonstrated psychological symptoms found in the record." *Urbanek v. Saul*, 796 F. App'x 910, 915 (7th Cir. 2019) (internal quotation and citation omitted) (emphasis added).

Instead of explaining why the record evidence supports a different CPP limitation in the RFC, Julie P. posits that limiting a claimant to simple, routine tasks is *per se* inadequate. But, the Seventh Circuit has expressly disavowed this theory, finding instead that facts in each case matter. *See Lockett v. Saul*, 834 F. App'x 236, 239 (7th Cir. 2020) ("Lockett cannot show a need for pace-specific restrictions in his [RFC] simply because of the 'moderate' designation; he must have evidence of that need, and he cites none."). Further, in *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019), the Seventh Circuit affirmed an RFC limiting a claimant to simple, routine tasks and simple decisions where "[t]he ALJ appropriately relied on the narrative statement [of a medical opinion] in crafting the hypothetical to the [VE] and the RFC." *Id. See also Lockett*, 834 F. App'x at 239 (affirming limitation to simple, repetitive tasks where "the medical expert … testified that [claimant] could work in a 'simple, repetitive, routine work environment with only occasional interaction with the public" because "[t]he ALJ was entitled to rely on this opinion").

The ALJ found Julie P. to be moderately limited in interacting with others and in CPP, adopting the following limitations in the RFC: "She has the mental residual capacity to […] carry out simple instructions [and] perform work allowing for a flexible pace free of production paces

8

or quotas, and have occasional interaction with supervisors other than what is necessary for task instruction and task completion." [Filing No. 7-2 at 21.]

Here, the two state-agency psychological consultants, Drs. Kenneth Neville and Dr. Donna Unversaw, relied upon by the ALJ, opined in their narratives that Julie P. could perform simple tasks and would have social limitations. [Filing No. 7-3 at 35-37, 51-53.] Drs. Neville and Unversaw found that Julie P. has social interaction limitations; namely that she was moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors. [Filing No. 7-3 at 36, 52.] On the other hand, they found Julie P. *not* significantly limited in her ability to interact with co-workers and the general public, or ask simple questions or request assistance. [Filing No. 7-3 at 36, 52.] In the narrative portion of their opinions, the Dr. Neville opined that "[Julie P.] can relate on at least a superficial basis on an ongoing basis with coworkers and supervisors." [Filing No. 7-3 at 37.] Dr. Unversaw confirmed her agreement with this assessment. [Filing No. 7-3 at 53.]

The psychological consultative examiner, Dr. McCoy, first opined that Julie P. was mildly limited with inattention and distractibility. [Filing No. 7-17 at 44.] He further opined that Julie P. may have some interference attending to simple tasks continuously for 2-hours but would work at a pace within normal limits and had no need for supervision. [Filing No. 7-17 at 44-45.] The ALJ found this opinion "generally persuasive." [Filing No. 7-2 at 24.] These findings are consistent with the state agency consultants' determinations that Julie P. had moderate limitations in carrying out detailed instructions and maintaining concentration for extended periods, moderate limitations in accepting instructions and responding appropriately to criticism from supervisors, and the consultative examiner's findings that Julie P. showed some mild distractibility. [Filing No. 7-3 at 35-37, 51-53.]

9

The ALJ adopted these findings but added the additional restriction that Julie P. had the mental residual capacity to carry out simple instructions and perform work allowing for a flexible pace free of production paces or quotas. The ALJ did not err by relying on these opinions to craft Julie P.'s RFC.

Furthermore, there was no significant evidence in the record that Julie P. was unable to concentrate on work, other than a mild level of inattention and distractibility. [Filing No. 7-17 at 44.] This distinction sets this case apart from *Winsted,* 923 F.3d 47, a case relied upon by Julie P. in her briefing. In that case, the record contained multiple medical opinions that the claimant had serious issues with concentration and attention, including the opinion of a state agency consultant that the claimant had "below average levels of mental control, understanding and memory, and concentration; poor levels of persistence." *Id.* at 475. No such evidence is present here, and, certainly, Julie P. has not directed the Court to such evidence in her briefing. *See Lockett,* 834 F. App'x at 239 ("[Claimant] points to no evidence that compelled a finding that he required more restrictions than [the medical expert] recommended.").

Finally, and perhaps most importantly, Julie P. has not identified evidence supporting greater restrictions for social interactions or CPP than those contained in the RFC. *See Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) ("[T]here is no doctor's opinion contained in the record which indicated greater limitations than those found by the ALJ."). Accordingly, the ALJ's RFC findings regarding social interactions and CPP are supported by substantial evidence.

### B. Julie P.'s Migraines

Next, Julie P. argues that the ALJ did not properly consider Listing 11.02 and simply stated that the record failed to demonstrate the listing level evidence of epilepsy or epileptic seizures. [Filing No. 9 at 24-25.] She contends that the ALJ must provide sufficient analysis for the Listing

that corresponds to each of a claimant's severe impairments, but there is no discussion of evidence or SSR 19-4p. [Filing No. 9 at 24-25.] Julie P. contends the ALJ failed to consider the number of absences and time off work necessary to address her recurring migraine headaches, and accommodations necessary for time spent in the dark and quiet room to recover from a migraine in the RFC finding. [Filing No. 9 at 26-30.] Lastly, Julie P. faults the ALJ for not obtaining a medical opinion as to whether her impairments equaled Listing 11.02. [Filing No. 30-32.] She contends that no state agency record reviewer looked at the evidence past August 3, 2020 and Listing 11.02 was not considered. [Filing No. 9 at 31-32.]

  The Commissioner responds that the ALJ does not need to do any more than state that an impairment does not meet a listing, provided the following discussion of the impairment supports that finding. [Filing No. 13 at 6 (citing *Plainse v. Saul*, 816 F. App/x 24, 2020 WL 466255, st *1 (7th Cir. 2020)).] The Commissioner argues that the ALJ considered the entirety of objective medical evidence regarding Julie P.'s migraines and the limiting effects following identification of medically determinable impairments that could produce such symptoms as required by SSR 19-4p. [Filing No. 13 at 7.] Further, the Commissioner contests Julie P.'s argument that any time listing equivalence is at issue and ALJ must request a medical opinion; the Commissioner argues that the responsibility for deciding medical equivalence rests with an ALJ or Appeals Council and that if at the hearings an adjudicator believes the evidence is does not reasonably support a finding that an individual's impairment medically equals a listed impairment, the adjudicator is not required to obtain a medical opinion prior to making a Step 3 finding. [Filing No. 13 at 9 (citing SSR 17-2p, *available at* 2017 WL 3928306, at *4).] Lastly, the Commissioner argues that Julie P.'s need to lie in a dark room to recover from a migraine was not supported by medical evidence,

and thus the ALJ did not err by not including such a limitation in the RFC assessment. [Filing No. 13 at 9-10.]

In reply, Julie P. states that the ALJ did not properly assess her headaches under the Listings and SSR 19-4p by failing to evaluate her self-reports, which are a necessary diagnostic tool and should not have been automatically discounted. [Filing No. 14 at 2.]

Because Julie P.'s arguments focus on the ALJ's analysis (or alleged lack thereof) of limitations posed by her migraine headaches, the Court begins with a summary of the evidence on that front. September 2019 treatment notes show Julie P. was prescribed topiramate for migraines after complaining of head pain after falling. [Filing No. 7-11 at 41-42.] Further progress notes from November 2019 detail Julie P. reporting facial headaches that were mostly dull with an area of pain the back of her head and aches all the time. [Filing No. 7-11 at 46-47.]

Julie P. completed a headache questionnaire on November 7, 2019, describing her migraine headaches and indicating she had a prior history of chronic headaches of more than one year. [Filing No. 7-7 at 33.] Julie P. reported severe headaches 3-5 times a week, usually lasting two to six hours, and that light, noise, smells, neck pops and lack of sleep cause her headaches. [Filing No. 7-7 at 33.] Further, Julie P. reported three types of headaches, dull, sharp, and pounding. For dull headaches, she could watch tv, do dishes and other chores and play some computer games. [Filing No. 7-7 at 33.] For sharp headaches, she needs quiet, btu she can read with a book for 25-30 minutes. [Filing No. 7-7 at 33.] For pounding headaches, she reported she cannot do simple chores, lays in a dark room with no sound and no movement. [Filing No. 7-7 at 33.]

At Step Two, the ALJ reported that Julie P.'s headaches fail to meet or medically equal Listing 11.00, and the medical record fails to establish evidence of any neurological deficits from

her condition. [Filing No. 7-2 at 19.] The ALJ found the following regarding her migraine headaches:

> the record fails to demonstrate listing level evidence of epilepsy or epileptic seizures (11.02), a vascular insult to the brain (11.04), a benign brain tumor (11.05), Parkinsonian syndrome (11.06), cerebral palsy (11.07), spinal cord disorder (11.08), multiple sclerosis (11.09), amyotrophic lateral sclerosis (11.10), post-polio syndrome (11.11), myasthenia gravis (11.12), muscular dystrophy (11.13), peripheral neuropathies (11.14), neurodegenerative disorders of the central nervous system, such as Huntington's disease, Friedreich's ataxia, and spinocerebellar degeneration (11.17), traumatic brain injury (11.18), coma or persistent vegetative state (11.20), or motor neuron disorder other than ALS (11.22). Accordingly, I find the claimant's migraine headaches fail to meet or medically equal listing level severity.

[Filing No. 7-2 at 19.]

At the hearing, Julie P. did not testify to any headache impairments. The VE testified that being off task more than 10% of the workday or away from the workstation up to ten minutes at a time would preclude competitive employment. [Filing No. 7-2 at 56-57.] The VE also opined that being absent from work more than one day per month would preclude competitive employment. [Filing No. 7-2 at 57.]

The ALJ's RFC finding did not include a limitation posed by absences or time off task. [Filing No. 7-2 at 20-21.] In assessing Julie P.'s migraines, the ALJ acknowledged Julie P. has a history of migraines but did not find they constituted an impairment. [Filing No. 13-2 at 19-22.] The ALJ found that Julie P.'s statements about the limiting effects of her impairments were "inconsistent because the medical evidence of record does not support a finding these issues would preclude [Julie P.] from working." [Filing No. 7-2 at 22.] The ALJ stated that these migraines were treated with medication and the records did not show ongoing issues which would cause a disability. [Filing No. 7-2 at 23.]

13

The regulations provide that "[f]or cases at the administrative law judge or Appeals Council level, the responsibility for deciding medical equivalence rests with the administrative law judge or Appeals Council." 20 C.F.R. § 416.926(e). Social Security Ruling 17-2p expands on this, directing that "[i]f an adjudicator at the hearings or AC level believes that the evidence does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, we do not require the adjudicator to obtain ME evidence or medical support staff input prior to making a step 3 finding that the individual's impairment(s) does not medically equal a listed impairment." SSR 17-2p, *available at* 2017 WL 3928306, at *4.

An RFC represents "the maximum a person can do—despite his limitations—on a regular and continuing basis, which means roughly eight hours a day for five days a week." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (internal quotation marks omitted). In determining an individual's RFC, "the ALJ *must* evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano*, 556 F.3d at 563 (emphasis added). An ALJ must provide more than a "cursory analysis" for rejecting limitations alleged by a claimant. *Id.* That is so because the ALJ must build an "accurate and logical bridge" between the evidence and the result. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). A court must uphold an ALJ's RFC determination "if the evidence supports the decision and the ALJ explains his analysis of the evidence with enough detail and clarity to permit a meaningful review." *Arnett v. Astrue*, 676 F.3d 586, 591-92 (7th Cir. 2012).

Although Listing 11.02 specifically applies to epilepsy, agency guidance provides that ALJs may consider whether a claimant's migraines medically equaled the requirements in Listing 11.02B. SSR 19-4p, *available at* 2019 WL 4169635, at *7. Julie P. bore the burden to establish medical equivalence by providing evidence that her migraines were "at least of equal medical

14

significance to those of a listed impairment." 20 C.F.R. § 416.926(b)(2). In evaluating medical equivalence, an ALJ "will not substitute [a claimant's] allegations of pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of [an] impairment(s) to that of a listed impairment." 20 C.F.R. § 416.929(d)(3). The symptoms, signs, and laboratory findings must be equivalent in severity to a listed impairment to find a claimant disabled at step three. *Id*

Listing 11.02B requires that migraines "occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment." 20 C.F.R. § 404, subpt. P, app. 1, § 11.02B. An ALJ may consider "[a] detailed description from an AMS of a typical headache event, including all associated phenomena . . .; the frequency of headache events; adherence to prescribed treatment; side effects of treatment . . .; and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day . . ." SSR 19-4p.

Here, the ALJ failed to sufficiently address and confront evidence of Julie P.'s migraines in formulating the RFC. The Court finds the RFC analysis troublesome because, although the record contains complaints about Julie P.'s headaches and environmental limitations were put in place, the undersigned is unable to discern from the ALJ's decision whether the ALJ considered the evidence regarding limitations of absence and time off task posed by Julie P.'s headaches that would affect her ability to work. *See Deborah M.*, 994 F.3d at 788 ("[A]lthough the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected.") (quoting *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)).

Thus, the undersigned finds that the ALJ failed to build a logical bridge between the evidence and the RFC finding, warranting remand. On remand, the ALJ should fully consider the

15

evidence of time off task and absenteeism limitations posed by Julie P.'s migraine headaches and so that the ALJ can fully articulate findings regarding the same.

      **C.     SSR 16-3p Subjective Symptom Analysis**

Julie P. next contends that the ALJ erred in her SSR 16-3p mental RFC determination due to an improper credibility determination. [Filing No. 9 at 32-35.] Julie P. argues the ALJ failed to identify a single factor of SSR 16-3p in his analysis. [Filing No. 14 at 3.]

The Commissioner contends that Julie P.'s argument regarding the subjective symptom analysis is undeveloped as merely boilerplate recitations of law, and not identifying any flaws in the ALJ's subjective analysis. [Filing No. 13 at 15.] The Commissioner argues the ALJ provided a thorough consideration of objective medical evidence and this in turn provided substantial support for his conclusion Julie P.'s statements were inconsistent with this evidence. [Filing No. 13 at 15.] Lastly, the Commissioner argues Julie P.'s broad, non-specific arguments are unpersuasive and insufficient to merit remand. [Filing No. 13 at 15 (citing *Cathy M. v. Kijakazi,* 2022 WL 122903, at *4, no. 1:20-cv-02125-TAB-SEB (S.D. Ind. Jan 13, 2022)).]

An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. *Shidler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). Nevertheless, the ALJ must provide specific reasons supporting his or her evaluation that are supported by the record. *Pepper*, 712 F.3d at 367.

SSR 16-3p addresses the method by which ALJs should "evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims." SSR 16-3p, *available at* 2017 WL 5180304, at *1. SSR 16-3p eliminates "the use of the term 'credibility'" from the evaluation process and clarifies that "subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding

symptom evaluation." *Id.* at *1. SSR 16-3p instructs ALJs to use the following method to evaluate statements regarding the intensity, persistence, and limiting effects of symptoms:

> Consistent with our regulations, we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms. We evaluate the intensity and persistence of an individual's symptoms so we can determine how symptoms limit ability to perform work-related activities for an adult.

*Id.* at *2. Thus, ALJs use a two-step evaluation of an individual's subjective symptoms. First, an ALJ must determine whether a claimant has "an underlying medically determinable physical or mental impairment that could reasonably be expected to produce an individual's symptoms." *Id.* at *3.

If the claimant is found to have such a medically determinable impairment at step one, the ALJ moves the second step in which the ALJ must consider all the evidence in the record to evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. To conduct this analysis at the second step, SSR 16-3p instructs as follows:

> In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; and individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

*Id.* at *4. When assessing credibility of a claimant's symptom testimony, the ALJ also considers the factors set forth in 20 C.F.R. § 416.929(c)(3), *i.e.*, (1) a claimant's daily activities, (2) the location, duration, frequency of the pain or other symptoms, (3) precipitating and aggravating factors, (4) the type, dosage, effectiveness, and side effects of any medication, (5) treatment received for relief of pain or other symptoms, (6) measures the claimant uses to relieve pain or

17

other symptoms, and (7) other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. *Id.*

Ultimately, the ALJ must explain the subjective symptom analysis "in such a way that allows [a court] to determine whether [the ALJ] reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (internal quotations omitted). And, "[n]ot all of the ALJ's reasons must be valid," to uphold a subjective symptom finding, "as long as enough of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009).

At step one, the ALJ found that Julie P.'s "medically determinable impairments could reasonably be expected to cause the alleged symptoms". [Filing No. 7-2 at 21.] However, at step two, Julie P.'s "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [Filing No. 7-2 at 22.] The ALJ provided the following reasons to support this finding at step two: (1) objective medical findings did not support the limitations to which Julie P. testified; (2) Julie P.'s symptoms improved with medication and treatment; (3) the ALJ included social limitations consistent with Julie P.'s testimony and medical opinion evidence; and (4) her daily activities showed she was more social and was able to function more independently than Julie P. testified.

The Court agrees with the Commissioner's argument in this instance. Julie P.'s argument is devoid mention of specific errors regarding the ALJ's SSR 16-3p analysis, other than a blanket assertion of error. Such an argument is insufficient. *See Cadenhead v. Astrue*, 410 F. App'x 982, 984 (7th Cir. 2011) (citations omitted) ("A generalized assertion of error is not sufficient to challenge an adverse ruling, and undeveloped or unsupported contentions are waived.") *See also*

18

*Cathy M.*, WL 122903 at *4 ("Once again, the arguments Plaintiff raises in relation to this issue are full of boilerplate statements of law or generalizations. Plaintiff points to no evidence that the ALJ supposedly overlooked or that would support a finding of disability."). As such, the Court finds this argument waived. However, because the undersigned has concluded remand is warranted on other arguments, the ALJ is free to reevaluate Julie P.'s subjective symptoms upon remand.

## IV.
## CONCLUSION

For the reasons detailed above, the Court **REVERSES** the ALJ's decision denying Julie P. benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4) as detailed above. Final judgment will issue by separate entry.

Date: 3/21/2023

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**